**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | No. 2:12-cv-02147-STA-dkv |
| v. ) | Cr. No. 2:08-cr-20136-BBD-1 |
| ) | |
| TRYMANE ANDERSON, ) | |
| Defendant. ) | |

**ORDER DENYING & DISMISSING MOTION PURSUANT TO 28 U.S.C. § 2255**
**ORDER DENYING CERTIFICATE OF APPEALABILITY**
**ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH**
**AND**
**ORDER DENYING LEAVE TO PROCEED** *IN FORMA PAUPERIS* **ON APPEAL**

On February 24, 2012, counsel for Defendant Trymane Anderson filed a motion pursuant to 28 U.S.C. § 2255 alleging that trial counsel Coleman Garrett provided ineffective assistance by failing to advise Defendant that:

> [t]he government had offered to allow the defendant to plead guilty to the original indictment and . . . had advised counsel for the defendant that if he did not plead guilty as charged the government would amend the indictment to add an additional count that would add 10 years to his sentence.

(ECF No. 1 at 4.) Defendant alleges that, had counsel shared the information, he would have pled guilty as charged. (*Id.*) When Defendant did not plead guilty, a four count superseding indictment was returned against him. (*Id.*) On June 1, 2012, the Court directed the United States to respond to the motion to vacate. (ECF No. 9.) On March 3, 2013, the United States filed a response contending that Defendant's motion is without merit. (ECF No. 14 at 1.) An evidentiary hearing was held on March 20, 2014. (ECF No. 25.)

## I. PROCEDURAL HISTORY

On April 15, 2008, a federal grand jury in the Western District of Tennessee indicted Defendant Anderson on one count of possession of cocaine base with the intent to distribute and distribution, in violation of 21 U.S.C. § 841(a)(1). (Criminal ("Cr.") ECF No. 1.) During a report date on December 19, 2008, Assistant United States Attorney ("AUSA") Kimbrell-Parks told United States District Judge Jon Phipps McCalla that she had "submitted a plea agreement" to attorney Garrett, but had not heard back. (Cr. ECF No. 171 at PageID 825.) Defendant Anderson had not appeared at the last three report dates. (*Id.*) Later that morning Ross Sampson appeared for Coleman Garrett, who was attending a seminar, and advised Judge McCalla that he was "anticipating a change of plea" and that "the government has submitted a plea agreement" but Garrett had not had a chance to review the agreement with Defendant." (*Id.* at PageID 827-28.) When Defendant Anderson arrived in the courtroom, Judge McCalla advised him that his next court date was January 9, 2009, for a "report and/or change of plea" and to "get with Mr. Garrett, go by and check with him at his office. . . . Mr. Garrett actually is in a seminar today, but you need to make an appointment to come in and see him as soon as you can so you can go over whatever the situation is going to be." (*Id.* at Page ID 832-33.)

At the report date on January 9, 2009, the matter was set for trial. (Cr. ECF No. 172 at PageID 836-43.) On January 28, 2009, a federal grand jury returned a superseding indictment against Defendant Anderson charging him with two counts of possession of cocaine base with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Counts One & Two), one count of possession of a firearm after the conviction of a felony, in violation of 18 U.S.C. § 922(g) (Count Three), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Four). (Criminal ("Cr.") ECF No. 83).

A jury trial commenced on March 9, 2009, before United States District Judge Bernice Donald.[1] (Cr. ECF No. 103.) On the first day of trial, Defendant Anderson entered an open plea to Counts One and Two of the superseding indictment without the benefit of a plea agreement. (*Id.*) Judge Donald stated on the record that the plea "would not really pretermit the evidence on the drug crimes because the government has got to produce the . . . connection with the drug trafficking business, so I want to make sure that we all understand that." (Cr. ECF No. 152 at Page ID 449.) When Judge Donald asked Defendant if he was satisfied with the representation provided by Mr. Garrett and if Garrett had discussed the charges, the penalties, and the strategy for going forward, Defendant replied, "Yes, ma'am." (*Id*. at PageID 451-52.) Judge Donald asked Defendant Anderson if he understood "that even though you are pleading guilty to these two drug counts and the jury would not have to make any decisions, the jury would still likely hear proof about those events because of the 924(c) charge. (*Id.* at PageID 452-53.)

After the testimony of witnesses, but before the jury was charged on March 10, 2009, Defendant pled guilty to the two remaining counts. (Cr. ECF No. 105.) Attorney Garrett advised Judge Donald that he "ha[d[ spoken at length with [his] client regarding his desire to terminate his trial and enter pleas to the remaining counts of this indictment and he has indicated that that is what he chooses to do at this time. And I told him, I explained to him that the process would be the same as it related to the first two counts of the indictment, that he would be pleading to the court on both counts on Count Three and Four, and went over the statutory penalties and his desire again, and that is what he has indicated that he wants to do. (Cr. ECF No. 154 at PageID 644.) Before taking Anderson's guilty pleas, Judge Donald asked if he was

---

[1]Judge Donald is now a judge on the Sixth Circuit Court of Appeals.

"satisfied with the representation provided [ ] by Mr. Garrett?" and Defendant responded, "Yes, ma'am." (Cr. ECF No. 154 at PageID 646.) Attorney Garrett told Judge Donald that Defendant "Anderson had a concern, a question about even though we had gone over previously the consecutive nature of his sentence as it relates to the fourth count of the indictment, and I have once again explained to him that it would run consecutive to any further sentence that he receives in this matter." (Cr. ECF No. 154 at PageID 651.) Judge Donald stated, "that's correct, and that's [ ] statutory, there is no getting around it. If you plead to it, it has to run consecutive to any other sentence." (*Id.*) Defendant replied that information did not change his mind on going forward. (*Id.*) Attorney Garrett also stated on the record that he had "gone over the proposed jury instructions with Mr. Anderson. I have explained to him the difference between actual and constructive possession. And as a matter of fact, when he came in this morning that was the terminology that he used and based on the proof that was submitted he wanted to change his plea because he realized that that was sufficient for constructive possession. . . . So he does understand the distinction between the two and it's not necessary for him to have owned the weapon, that if it was, as the court has explained, within proximity of his location and available to him then that would be sufficient." (*Id.* at PageID 654.)

On October 26, 2009, Judge Donald conducted a sentencing hearing, at which time Defendant Anderson expressed dissatisfaction with Garrett, stating that he had wanted to plead guilty to the drug charges, that he didn't understand why he was charged with the gun, and that counsel proceeded to trial without his consent. (Cr. ECF No. 155 at PageID 679-80.) Judge Donald explained that if counsel can't negotiate a charge away, a defendant must enter a plea of not guilty and go to trial on it. (*Id.*) Judge Donald stated:

> Well, Mr. Anderson, I know I would have explained to you that you had an absolute right to plead not guilty and go to trial. And I would have ascertained that it was your desire voluntarily to go to trial. And I would have also inquired whether you need to talk with your attorney about anything that was going on and you . . . but at the time I took your plea I would have ascertained that your plea was a knowing, voluntary, counseled and informed plea and you apparently didn't tell me about any problems with counsel at that time, nor did you request to have a change of counsel at that time. . . . Now I would imagine that what is happening now is the realization of the magnitude of the time that is involved in this case. And again that is not something that counsel has any control over, that's a congressional issue. So we will go forward, but I will certainly allow you to make any statement on the record that you want to make during the course of this sentence.[2]

(*Id.* at PageID 683-84.) Judge Donald imposed a sentence of one hundred eighty (180) months imprisonment. (Cr. ECF No. 132.) Judgment was entered on October 27, 2009. (Cr. ECF No. 135.)

Defendant filed a notice of appeal. (Cr. ECF No. 141.) Defendant raised a single issue: the Court erred in applying an official-victim enhancement. (Cr. ECF No. 159.) On March 24, 2011, the United States Court of Appeals for the Sixth Circuit determined that Judge Donald's application of the six-level enhancement for official victim status was improper, vacated Defendant's sentence, and remanded the case for resentencing. (*Id.*) On July 7, 2011, Judge Donald sentenced Anderson to one hundred sixty-one (161) months in prison. (Cr. ECF No. 168.) Defendant did not appeal.

---

[2]Defendant denied having any conversations with Garrett about entering a plea to the original indictment or conversations about the government issuing a superseding indictment if he did not enter a plea. (Cr. ECF No. 155 at PageID 689-90.) Anderson admitted that he continuously told Garrett that he never had a weapon despite counsel showing him pictures of a weapon. (*Id.* at PageID 690-92). He also admitted that if he had known the government had videotape showing the weapon on the table where he was cutting dope, he would not have gone to trial and that he proceeded to plead guilty after the videotape was shown during trial. (*Id.* at 692-94.)

5

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id.*

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. *El-Nobani v. United States*, 287 F.3d 417,

420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." *Bousley*, 523 U.S. at 622.

"[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *see also DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (same).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), Section 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather

7

than statements of fact.'" *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Defendant contends that counsel's performance deprived him of a plea bargain. A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. [*Strickland*, 466 U.S.] at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687.

*Harrington v. Richter*, 131 S. Ct. 770, 787 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[3] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S.Ct. 2052.

---

[3]"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland*, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

8

*Richter*, 131 S. Ct. at 787-88; *see also id.* at 791-72 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." (citing *Strickland*, 466 U.S. at 694)).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 131 S. Ct. at 788.

The Sixth Amendment right to effective counsel extends to the plea-bargaining process and is governed by the two-prong *Strickland* test. *Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012) (citing *Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399, 1386–87 (2012)); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). To establish constitutionally ineffective assistance in

9

the plea-bargaining process, the defendant must show not only that counsel was deficient, but that the outcome of the plea process would have been different with competent advice. *Lafler*, 132 S. Ct. at 1384 (citing *Frye*, 132 S. Ct. at 1388–89)).

The Supreme Court cases on counsel's deficient performance with regard to plea discussions generally fall into one of two categories: (1) counsel failed to communicate a favorable plea offer to the defendant before the time to accept the offer expired, *see*, *e.g.*, *Frye* (counsel's failure to communicate a formal offer from the prosecution to accept a plea on terms and conditions that may be favorable to the accused constitutes deficient performance); or (2) counsel gave materially inaccurate sentencing information or advice to defendant who, based on that advice, rejected the offer and proceeded to trial, *see*, *e.g.*, *Hill* (counsel's failure to accurately inform the defendant of the amount of time he would have to spend in prison before he became eligible for parole constituted deficient performance).

### III.   TESTIMONY AT EVIDENTIARY HEARING

On March 20, 2014, the Court held an evidentiary hearing to determine whether Anderson's attorney, Coleman Garrett provided ineffective assistance of counsel by failing to adequately communicate a plea offer by the United Sates. (ECF No. 25.) Both Defendant and Garrett testified. (*Id.*)

Defendant Anderson testified that he had pled guilty to the drug charge in state court, was sentenced to three years, and was put on probation. (ECF No. 27 at PageID 64.) Defendant stated that when he was ready to get out of the Shelby County Jail, he was picked up by U.S. marshals. (*Id.* at PageID 65.) Defendant testified that he explained to Garrett that he had already pled guilty to the drug charge in state court. (*Id.* at PageID 66.) Defendant recalled no conversations with Garrett about whether he would plead guilty or go to trial. (*Id*. at PageID 67-

10

68.) Anderson denied that Garrett told him that the prosecutor had said if he didn't plead guilty to the one-count indictment, that she would supersede the indictment and add gun charges. (*Id.* at PageID 72.) Defendant contended that he did not understand why the prosecutor superseded the indictment and Garrett didn't know why either. (*Id.*) After the superseding indictment was issued, Anderson denied having any conversations with Garrett about how to proceed with the case or how a conviction on the gun charge would affect his sentence. (*Id.* at PageID 76-77.) Defendant denied that Garrett advised him that pleading guilty to the original indictment would save him from an additional ten years imprisonment. (*Id.* at PageID 77.) Defendant testified that after the jury was selected he tried to plead guilty to just the drug charge because he was never arrested for a gun, but as he recalled Judge Donald told him that if he was going to plead guilty to the drug charges, he would have to plead guilty to the gun charges, too. (*Id.* at PageID 77, 85.)

Defendant testified that before trial, Garrett met with him at Mason and told him that the prosecutor superseded his indictment because he wouldn't take the plea. (ECF No. 27 at PageID 78.) Anderson insisted that he had never been offered a plea. (*Id.*) Anderson testified that Garrett recorded the conversation. (*Id.*) Anderson testified that he was fuming mad with Garrett after the conversation. (*Id.* at PageID 80.)

Defendant testified that when he pled guilty, he told Judge Donald that he was never offered a plea and that he and Garrett did not communicate. (*Id.* at PageID 79, 81.) Anderson stated that he never denied his guilt on the drug charges and, if Garrett had told him that he had the opportunity to plead guilty to the original indictment, he would have done so. (*Id.* at PageID 79-80.)

11

Defendant Anderson admitted during cross-examination that he was upset when he was indicted on the federal charge because he did not understand how he could be charged in federal court when he had already pled guilty in state court. (ECF No. 27 at PageID 89-90.) He admitted that Garrett told him that it could happen. (*Id.* at PageID 90.) Defendant insisted that Garrett never talked to him about the possibility of a plea. (*Id.* at PageID 93-94.) Defendant admitted that at the time he entered his guilty pleas he told Judge Donald that he was satisfied with Garrett's representation. (*Id.* at Page ID 100.)

Attorney Coleman Garrett testified that he was appointed to represent Defendant Anderson and entered an initial appearance on May 28, 2008. (ECF No. 27 at PageID 112.) Garrett's notes reflected that 762 pages of discovery were copied for Defendant Anderson on July 15, 2008, and delivered on July 21, 2008, so that Anderson could review it before they met to discuss the case on August 5, 2008. (*Id.* at PageID 113.) Garrett testified that his note of August 5, 2008 reflected that Anderson insisted that he could not be prosecuted in federal court because he had already pled guilty and been sentenced in state court and believed that a federal prosecution would amount to double jeopardy. (*Id.*) Garrett testified that Defendant Anderson was adamant in his position and Garrett was unsuccessful in getting him to change his views or to accept Garrett's opinion. (*Id.* at PageID 114.) Garrett noted that most of their conversations were by phone because Anderson was hard to reach and he failed to appear for appointments numerous times, but when they did talk, "he was totally committed to his position and . . . he wouldn't listen. . . . he just didn't respect my opinion. (*Id.*) Garrett testified:

> We talked about the process and how to proceed and how the criminal process worked in federal court. When you say talking about the possibility of discussing a guilty plea, Mr. Anderson was adamant that they wouldn't proceed against him, it was double jeopardy, and that was not an option. He was not going to consider a guilty plea on something that he had already pled guilty to . . . my

12

>recommendation was to plead guilty because we had no defense going to trial. He had already pled guilty in state court. It was already part of the record that the government would have access to, so we needed to plead guilty to the drug charges that were in the federal indictment because we could not prevail if we were to go to trial on those charges . . . he would not listen.

(*Id.* at PageID 115.)

Garrett testified that on January 8, 2009, he and Anderson met for an extended period of time to discuss the disposition of his charges and reviewed the discovery. (*Id.* at Page ID 116.) Once again, Anderson would not consider a guilty plea to the drug charges in the federal indictment notwithstanding the fact that he had already pled guilty in state court. (*Id.*) They appeared in court on January 6, 2009, for a report date and Garrett informed AUSA Kimbrell-Parks that Anderson would not consider a plea. (*Id.*) At that time, Kimbrell-Parks told Garrett that if Anderson did not consider a plea, that there would be a superseding indictment issued charging him with a firearm. (*Id.* at PageID 117.) Garrett stated that he asked for some time, went outside the courtroom, and talked to Anderson, explaining to him that if he did not take the plea on the drug charges, the government was considering a superseding indictment. (*Id.*) Anderson refused to consider the plea, and the case was set for trial. (*Id.*) Counsel testified:

>It really frightened me . . . because when Ms. Parks told me that the government was going to seek a superseding indictment . . . with respect to the gun charges and knowing how serious those gun charges were and the kind of time that they carried in light of what we had on the table with the drug charges, I tried my best to convey the significance of a plea agreement at that time to Mr. Anderson because Ms. Parks basically said, you know, you take it or leave it, if you don't want to plead, this is his last opportunity to do so or we are going forward with this superseding indictment on the gun charges. So I tried my best to convey to him the significance of trying to resolve the matter at that point before that superseding indictment came down, and he just would not consider it.

(ECF No. 27 at PageID 120.)

The superseding indictment was issued on January 28, 2009. (Cr. ECF No. 83.) Defendant was arraigned on the superseding indictment on February 3, 2009. (Cr. ECF No. 87.) On February 9, 2009, Defendant failed to appear for a report date and a warrant was issued for his arrest. (Cr. ECF No. 91-92.) Defendant was taken into custody on February 20, 2009, and his bond revoked on February 25, 2009. (Cr. ECF No. 94.) Counsel testified that he had a telephone conference with Defendant on March 2, 2009 and talked to family members. (ECF No. 27 at PageID 118.) Counsel stated that on March 5, 2009, he met with Anderson at Mason in preparation for trial and on March 7, 2009, met with Defendant's witnesses. (*Id.*) Counsel did not recall ever receiving a plea agreement because Anderson would never consider a plea and the government doesn't send plea agreements "if you don't give them an indication that your client is willing to accept a plea." (*Id.* at PageID 119.)

## IV. ANALYSIS

The Court has reviewed the entire record of Defendant's criminal and this civil case, including the testimony from the evidentiary hearing, and concludes that defense counsel's performance was not deficient. Anderson claims that defense counsel failed to convey a plea offer to him. Failure to inform a client of a plea offer is a serious enough error to satisfy the performance prong of *Strickland*. *See United States v. Blaylock*, 20 F.3d 1458, 1465-66 (9th Cir.1994) (collecting cases from several circuits); *Turner v. Tennessee*, 858 F.2d 1201, 1205 (6th Cir.1988) (holding that incompetent advice resulting in defendant's rejection of plea offer is deficient performance under *Strickland*), *vacated on other grounds*, 492 U.S. 902 (1989).

A substantial disparity between a plea offer and the potential sentence is strong evidence of a reasonable probability that a properly advised defendant would have accepted the plea offer. *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003) (evidentiary hearing warranted as to

14

whether defendant would have pleaded guilty where attorney failed to convey plea offer of five years and defendant sentenced to 156 months) (citing *Magana v. Hofbauer*, 263 F.3d 542, 552–53 (6th Cir. 2001) (difference between ten and twenty year sentence significant); *United States v. Gordon*, 156 F.3d 376, 377–81 (2d Cir. 1998) (disparity between 10 year sentence in plea offer and 17 1/2 years the defendant received was objective evidence that a plea would have been accepted)). However, an attorney's failure to insist that his client accept a plea offer due to overwhelming evidence of guilt does not constitute constitutionally ineffective assistance.

> The decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

*Id.*

Anderson alleges that defense counsel never discussed a plea offer with him. Anderson's testimony was unconvincing and is belied by the record. The credible evidence establishes that the United States extended a plea offer to Anderson which would have allowed Anderson to plead guilty to the original one-count drug-trafficking indictment. Anderson would not consider pleading guilty to the one count drug trafficking indictment because he did not believe that both federal and state governments could prosecute him for the same crime. Anderson did not accept Garrett's legal advice or opinion.

Anderson's contention that he would have accepted the plea offer is self-serving and equivocal. The record establishes that Judge McCalla told Defendant his matter was set for a "report and/or change of plea" on January 9, 2009. Even assuming that the terms of the plea were not discussed on that date, it is unreasonable that Anderson would not inquire about the terms of any plea offer since he emphatically claims now that he would have accepted. If either

party refuses or chooses not to negotiate, for whatever reason, there can be no plea agreement. Anderson's initial stance that he could not be indicted for the drug offense that he had pled guilty to in state court renders it unlikely that he would have consented to plead guilty.

On January 6, 2009, AUSA Kimbrell-Parks brought the plea negotiations to a close by advising counsel that if Anderson did not take the plea offer, the government would indict him for the firearm, resulting in an additional consecutive ten-year sentence. Anderson rejected the offer. The four-count superseding indictment was issued. Anderson then insisted he was innocent of possessing a firearm until the government's videotape was shown during trial. The Court finds Garrett's testimony that he communicated the plea offer to Anderson is consistent with the record. The fact that Anderson now faces a significantly greater prison sentence than the sentence he would have faced had he accepted the Government's plea offer is a harsh consequence of his decision. That decision, however, was made with knowledge of the terms of the offer. The Court finds that Garrett adequately conveyed the terms of the United States' plea offer to Anderson and his performance was not constitutionally deficient. The Court need not address the prejudice prong of the *Strickland* test.

## V. CONCLUSION

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Defendant's conviction and sentence are valid and, therefore, his motion to vacate (ECF No. 1) is DENIED. Judgment shall be entered for the United States.

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional

right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

A COA may issue only if the movant has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2), (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337).

In this case, for the reasons previously stated, Defendant's claim lacks substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a)

17

also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED. If Defendant files a notice of appeal, he must also pay the full $505 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days (*see* Fed. R. App. P. 24(a) (4)-(5)).

**IT IS SO ORDERED,** this 1st day of December, 2014.

                                                  **s/ S. Thomas Anderson**
                                                  S. THOMAS ANDERSON
                                                  UNITED STATES DISTRICT JUDGE